The next case in our call this morning is Agenda No. 14, Case No. 108-038, Kenneth W. Schultz, etc., et al., Appalese v. Illinois Farmers Insurance Company, Appaland. Good morning, Your Honors. Dan Worker on behalf of the Illinois Farmers Insurance Company. As this Court is aware, this case comes before it from a consolidated case in the Circuit Court of Cook County. In the Schultz case, the trial court ruled in farmers' favor, finding that its definition of underinsured motorist, which was more restrictive than the definition of uninsured motorist, did not violate public policy. In the Weglar's decision, the trial court found that farmers' policy language was ambiguous and that the endorsement itself in some way contradicted the main terms of the policy. The Appellate Court First District reversed the trial court in the Weglar's case and affirmed, I'm sorry, in the Schultz case and affirmed in the Weglar's case, not on the ambiguity ground, but finding that farmers' policy language violated public policy. Farmers asked this Court to review the Appellate Court's determination that it was required under any statute to provide underinsured motorist coverage to occupants in its vehicle. Because the Appellate Court found that the clause violated public policy, it basically is impairing the parties' rights to free contract, and the Court is cognizant of the fact that such public policy determination striking policy language in the state should be used sparingly, and they should be used when the statutes themselves dictate such a result or the case law is clear in that regard. Since there is no overriding public policy considerations with regard to the definition of who qualifies as an insured for this type of coverage, we're asking the Court to reverse that determination in this case. In considering the issue, I would like the Court to consider the fact that the claimants in this consolidated appeal are strangers to our contract. They are passengers or occupants of the vehicle. They are not the policyholder. They're not required by statute to be provided liability coverage as liability insureds, period. It is undisputed in this case that the endorsement does not include these occupants as insureds. I'll address the public policy finding first because I think that is the main argument against the Appellate Court's decision in this case since it never even considered the ambiguity argument. In reaching its decision, the Appellate Court incorrectly construed the underinsured motorist statute, section 5-143A-2 sub 4, to require that anyone insured for uninsured motorist coverage must also be insured for underinsured motorist coverage. That statute, if it's looked at closely by this Court, only requires that the limits that are elected by the policyholder, farmers named insured, be the same for both coverages. For example, if the insured elects coverage in excess of the 2040 required under our financial responsibility law, then the insured must be given the opportunity to elect increased coverage for both of those coverages. Nothing in section 143A-2 sub 4 requires that the insureds under the uninsured motorist statute and underinsured motorist statute be the same. And it's for this reason that the Appellate Court's reasoning in its decision is flawed. The Appellate Court presumed that the legislature, in enacting this statute, intended not only that the limits be the same, but the insureds be the same. And there is nothing in the language of that statute that has such a requirement. So under your analysis, it's strictly a matter of statutory construction? Exactly. And it's not ambiguous? Exactly. The statute is clear. The statutes, both the uninsured motorist statute under 143A and the underinsured motorist statute under 143A-2 sub 4, clearly define the protected class of insureds that they're talking about. In the first section of both of those statutes, they're very similar. They talk about coverage being provided to the owners or operators of those vehicles. In this case, it would be the named insured and permissive drivers. And that's consistent with Section 317 of the financial responsibility law that requires that liability policies issued in this state be required to provide liability coverage for those classifications of insureds. The Phelan decision, although decided much earlier than the enactment of the underinsured motorist statute, looked at the language that I referenced before in Section 143A as requiring those that qualify as insureds under the policy for liability coverage must also have uninsured motorist coverage. The language in the underinsured motorist statute before the court is very similar in that regard. That is that liability insureds, the named insured, permissive drivers, and family members are required to have uninsured motorist coverage. Occupants are found nowhere in this court's statutes or the case decisions of this court, I should say. None of the claimants in this case fall within any of those categories. Now, farmers, in the main body of its policy for uninsured motorist coverage, define insurers to include occupants. The underinsured motorist endorsement does not. This is an underinsured motorist case. Since the claimants do not fall within the classification of insured, they are not entitled to that coverage under our policy as strangers to our contract. Since the statutes in this case only require the classifications of insureds, the named insured, and permissive drivers to have this coverage, farmers' exclusion of that classification of insured from the underinsured motorist statute and underinsured motorist coverage does not violate any public policy of this state. Now, the appellate court also criticized farmers' payment of O'Connor's claim in the Weglar's case, and counsel spends nine pages, almost half of it is brief, criticizing farmers' decision in that regard. I'll remind the court that O'Connor was the permissive driver of the vehicle that Weglar's was a passenger in. Following Bertonini and Phelan, which recognize that liability insurers must be provided coverage, farmers made the decision to pay the permissive driver's claim, because under the statute, and it's farmers' argument that it must comply with all statutory requirements enforced at the time the policy was issued, required such liability coverage be provided to permissive drivers. Since O'Connor was a permissive driver, it follows under Phelan and Bertonini that O'Connor was entitled to underinsured motorist coverage under our policy. If this court follows the more restrictive interpretation that the First District gave in its decision in Coase, then farmers would not be obligated to provide any coverage at all to O'Connor. But the fact that it felt that the statutory requirements in fact required it to do so should have no bearing, that payment should have absolutely no bearing on the claimant's claim in this case. The classification of insured is different. We believe the statute provides such coverage and clearly indicates no reason for insuring occupants, which the claimants are in this case. Farmers' position with regard to defining insured as compliant with statutory requirements, the court also looked at the Solcer decision. Now, Itla in their brief and Schultz in their brief followed the court's lead in their quote out of Solcer. And in Solcer the statement that the appellate court relied on was that the legislator intended to avoid the absurd situation where a policyholder would receive fewer benefits in the fortuitous event of being injured by an underinsured motorist rather than an uninsured motorist. Bert Tannini, Lee v. John Deere relied on by Schultz and the appellate court look at the policyholder's rights. The name insured, the reference category of classified protected people under the statute. And it's for this reason that Solcer, Lee v. John Deere have no applicability whatsoever to this case. None of the passengers in this case qualify as policyholders. Am I correct, though, that if these people had, I don't know whether you'd call it good luck or not, but if they got hit by an uninsured motorist, they'd all be covered? Yes, because of the gratuitous definition that Farmers has in the main body of its policy granting such coverage to occupants for uninsured motorist coverage. Keeping in mind that nothing in the statute requires Farmers to provide that coverage. You know, there are certain circumstances in which Is it an absurdity that the two are treated differently in the same policy? It's treating definitions of insurers. If the court looks at the requirements of whether or not Farmers has to provide that coverage, they don't. The fact that they included the coverage, there's nothing in the state's law that says that if you over-include an insured, that somehow it creates ambiguity within the policy. So as long as Farmers is complying with the statutory requirements, which it is. Mr. Parker, doesn't that at least, though, lessen the strength of your argument when, you know, you started out by saying this is an occupant, this is an occupant, it's an occupant, and yet Farmers saw fit to include in the definition of insured for purposes of underinsured motorists, for uninsured motorists, rather, that occupant would be included. And you're saying that's gratuitous, but doesn't it at least lessen the strength of the argument, you know, there must be, you know, they did see fit in one instance and not the other. Well, when you compare the main body of the policy, which is a standard policy form which Farmers uses not only in the state of Illinois, but in other states. And all those states have different definitions and requirements and definitions of who is required to have coverage under that policy. The endorsement that's issued in this case is Illinois specific. It's a more current form, more current definition. So when you consider the standard form, so to speak, policy that they use, it could be easily overlooked that the definition may be more inclusive than is required by statute. That overinclusion should not be. So it's more the newer versus the older type of forms that you're using. You're not arguing, or I don't hear you arguing, that there's any appreciable difference in the underinsured and uninsured motorist coverage that makes sense why an occupant would be part of a definition of insured in one and not the other. Correct. I mean, what my argument is is that there's no requirement in this state whatsoever to provide any such coverage documents. And the fact that they were included within the definition of uninsured motorist in our policy should not automatically trigger coverage when the clear terms of the policy say otherwise. And there is nothing in the statute that requires us to provide that coverage to them. Isn't that always true when questions of public policy override another statement, even a policy statement? But they have to be tied to some legislative purpose that the court can look to and requirements for us to provide that coverage. The legislative purpose that we want to have as wide coverage as possible. And we do. We provide actually more coverage in the uninsured motorist section of our policy than is required by statute. It's not fair for me to expect you to agree with me. I'll just touch briefly on the ambiguity argument because really it has so little merit. It warrants very little consideration by this court. The policy itself, the endorsement, specifies what the case law in the state is. It says that the endorsement controls to anything to the contrary in the main body of the policy. I mean, there's significant case law. Farmers didn't even need to include that language in the endorsement. And that's the starting point. First you look to see where the language of the endorsement differs from the main body of the policy. And then you incorporate all those terms and conditions so that the endorsement doesn't have to basically restate what's contained in the policy to the contrary. Since the definition of uninsured motorist is different from the definition in the endorsement, the endorsement controls over the contrary language. If the court has no further questions, I'll save time for rebuttal. Thank you. Counsel. If it may please the court, my name is Frank Stevens. I represent the aptly Kenneth Schultz, executive of the estate of Patricia Smetana. Your Honors, I think Mr. Worker's comment with respect to the policy endorsement is telling. Apparently farmers, under Mr. Worker's description, issues these policies all over the country and has special endorsements for various states. The fact of the matter is the endorsement for uninsured and underinsured motorist coverage, especially underinsured motorist coverage that farmers use in Illinois, in these two cases, misses the mark. It doesn't comply with the Illinois statute. It doesn't comply with Illinois law. And the reason why I spent nine pages of my brief addressing what they did with O'Connor and providing underinsured coverage for O'Connor is to show that they can't get it right for anybody. Their argument here is that Ms. O'Connor was entitled to underinsured coverage, not because of anything that's said in that policy. The policy, in fact, excludes her for underinsured coverage. The policy provides underinsured coverage only for you, the named insured, and a family member. Ms. O'Connor was neither. There's nothing in that policy that says they're going to provide underinsured coverage for a driver or operator. They say that they had to provide coverage or they decided to provide coverage for Ms. O'Connor despite their policy language because the case law and the statute required it. So their policy language is deficient, especially with respect to Ms. O'Connor. The reason why we believe that Ms. Smetana's estate is entitled to underinsured coverage is because it is our contention, it was a contention or it was a decision of the appellate court, that once you determine someone is entitled to uninsured coverage under the policy, you must also determine that they are entitled to underinsured coverage in order to meet the statutory scheme. We are not taking the position, and we don't need to take the position in this case, that it was incumbent on farmers to define Ms. Smetana as an insured for uninsured coverage. What we are saying is that once she was defined as an insured for uninsured coverage, it was incumbent on farmers to provide underinsured coverage to her too. Now, counsel talks about how some of these cases, including Sulzer, which is one of this court's greatest pronouncements on the purpose and the reasons for the underinsured statute, involved named insureds. And he makes the point repeatedly that Ms. Smetana was not a named insured. Well, a more recent pronouncement on the purpose and the reasons for the underinsured statute is this court's decision in Cummins v. Country Mutual. In Cummins, Mr. Cummins was a passenger in a vehicle. He was not the named insured. And yet, this court used the same logic, the same reasoning, and the same rationale that it employed in Sulzer to decide that Mr. Cummins was entitled to underinsured motorist coverage. There's no question that the statute, as it now exists, requires that when you have uninsured motorist coverage in excess of 2040, in excess of the statutory minimum liability limits, you must have underinsured motorist coverage in the same amount. It would have been contrary to statute, impermissible, improper, for farmers to issue a policy that would have provided Ms. Smetana with $250,000 of uninsured coverage but only $25,000 of underinsured coverage. They couldn't do that. And yet, farmers take the position that it's permissible for them to issue a policy with $250,000 of uninsured coverage but no underinsured coverage. That's absurd. That makes no sense. The primary rule in statutory construction is to ascertain and give effect to the intent and the meaning of the legislature. It's clear from the legislative debates, it's clear from your decisions in Sulzer and in Cummins and other cases that the purpose of underinsured motorist coverage is to prevent the situation where somebody would actually receive more coverage and more benefits when they were struck by an uninsured motorist than they would receive if they were struck by somebody who was inadequately insured. That's the purpose for the underinsured motorist statute. That's what should be accomplished here. It is absurd that Ms. Smetana's estate would have received or could have received up to $250,000 of uninsured coverage from farmers, but farmers take the position that she's not entitled to any underinsured motorist coverage. Mr. Stevens, do you agree or disagree with Mr. Walker's argument that they would not have had to include occupants in the uninsured motorist portion of their policy and wouldn't have had to pay? Well, Your Honor, as we said in our brief, we don't believe the court needs to raise that issue and we're not making the argument that Ms. Smetana was necessarily required to be insured under uninsured motorist coverage. Their support for their proposition is a case called Phelan, Heritage Insurance, Phelan versus Heritage Insurance, which was decided in 1974 and which involved a named driver exclusion. It was decided that because the young man, a 19-year-old driver, who apparently had a poor driving record was not an acceptable risk to Heritage Insurance, he wasn't insured for any coverage under that policy. I'm not sure a 1974 case decided six years before the advent of underinsured coverage and nine years before underinsured coverage became mandatory by 143A2 is really the appropriate case to decide that issue, Your Honor. But what we are saying in this case is the fact that they made Ms. Smetana an insurer for uninsured motorist coverage meant that they also had to make her an insurer for underinsured motorist coverage in order not to produce the absurd results that this court addressed in both Seltzer and in Cummins versus Country Mutual. You would then take issue with the statutory language that says the insured, the covered people are those as named in the policy or something, that language to that effect. Well, what counsel is referring to is the Mandatory Insurance Act and says that any policy of motor vehicle insurance must provide coverage to the owner and operator of a vehicle. And then he leapfrogs to conclude that the owner and operator are the only two people that are required under the statute to be covered by uninsured and underinsured motorist coverage. I don't really think there's any justification for that conclusion. But even assuming that to be the case, it's our position once again that once Ms. Smetana became insured for uninsured coverage, she also necessarily had to be insured for underinsured motorist coverage. And that's exactly what the appellate court ruled. Counsel, in referring to the statute, the statute says insured is defined in the policy in a couple of places in 143-24. So the statutory construction doesn't have anything to do with this? Well, statutory construction, of course, has everything to do with it, Your Honor. But as this Court has said, all words and phrases in an insurance policy must be interpreted in light of other relevant provisions of the statute and must not be considered in isolation. And this Court has also ruled that you must consider the statutory scheme, the purpose for the underinsured motorist statute. So you're saying it's ambiguous? What I'm saying is to say that phrase in and of itself does not conclusively decide that farmers can unilaterally decide who is going to be an insured for underinsured motorist coverage. Because if that were true, Your Honor, if that were true, then why would they pay Ms. O'Connor's claim? Because her policy language does not define Ms. O'Connor as an insured for underinsured motorist coverage. But he came, Mr. Worker came before you a few moments ago and said, we had to provide coverage to Ms. O'Connor because the statute and the case law requires it. So you can't argue both positions. You can't say that we have the absolute right to decide who is an insured because the language of the statute says, has that phrase. And then the same argument come back and say, well, even though we didn't include them in our policy, we had to include them because of previous case law. You would have no argument, counsel, if the uninsured motorist provision definition of insured did not include occupant. Is that right? It sounds like your argument is based on if you include occupant under uninsured motorist that necessarily that occupant has to be part of the definition of insured for uninsured motorist. Respectfully, Judge, Your Honor, if this court were to decide that occupants as a rule do not need to be included as insureds for purposes of uninsured or underinsured motorist coverage, I believe it would wreak havoc on the state of insurance law in the state of Illinois. That's really not an issue before this court. And as I said before, it's not an issue that we're asking this court to decide. No, I think the way you frame the issue is because occupant was included in farmer's policy for purposes of uninsured motorist by necessarily occupant has to qualify for underinsured motorist. Absolutely. That's exactly our position. So my question is that would you take the same position if in the definition of insured for either uninsured or underinsured motorist that occupant was not in the definition? That's my question. If I understand you, and I don't mean to be difficult about this, but are you asking me is it necessary to make an occupant an insured for uninsured motorist coverage? Is that essentially what you're asking me? Right. Would you be making the argument to this court that both uninsured motorist coverage and underinsured motorist coverage should be provided for occupants? I think I could come to this court if that were the issue and make a strong public policy argument why occupants should be covered for both coverages. But your argument today is once included in one, it has to be included in the other. Yes. I have a co-counsel who we've agreed to split some time with, so unless anyone has another question, I'm finished. Thank you. May it please the Court. My name is Michael Yovanovitch. I represent the police in the companion case of Illinois Farmers v. Barbara Weglars et al. Your Honor, in this particular matter, the appellate court in my case, they did not arrive at our arguments because they already ruled in the appellate decision that there was a public policy violation, so the court didn't get to the ambiguity issue, although the appellate court did affirm our case. So I just wanted to make a few comments with respect to the ambiguity issue that is contained in the briefs. And the ambiguity issue involves the inconsistent language, it's our position, of the endorsement itself. The endorsement itself does include occupants for the purposes of UIM coverage under this argument in that the first paragraph of the endorsement states that all the terms and conditions of Part 2, uninsured motorist coverage Part C, apply to underinsured motorist coverage C1, in addition to the provisions of this endorsement. So the endorsement in question, the first paragraph of the endorsement in question, what it does is it does take the terms and conditions of UIM coverage and brings it within the four corners of the endorsement. As a consequence, by bringing it in, it becomes part of the endorsement. The ambiguity, it's our argument, sets in that later on in the endorsement itself, it discusses that this endorsement is part of the policy. It supersedes and controls anything to the contrary. It is otherwise subject to any and all terms and conditions of the policy. So what we have in this endorsement by way of this first paragraph is that it sets forth two sets of definitions or two sets of a definition of an insured for an underinsured motorist coverage. The definition from uninsured motorist coverage, which is incorporated and made a part of the endorsement by way of the first paragraph, and the written language of the endorsement itself. We have two diametrically different definitions here for what constitutes an insured for underinsured motorist coverage, thereby making it internally inconsistent within the four corners of the document and ambiguous, and taking the plain and ordinary language. Counsel, what's the import of the language in the statute that says the term underinsured motor vehicle means a motor vehicle whose ownership, maintenance, or use has resulted in bodily injury or death of the insured as defined in the policy? Your Honor, that would involve the public policy argument, but let me answer the question. As defined in the policy, within the policy, a occupant is defined as an insured in U.M. coverage. U.M. coverage is part of the policy. So therefore, when looking at the policy, there is part of the policy where the occupant is an insured. So it is as defined in the policy. Farmers chose to make an occupant an insured under U.M. motorist coverage. And I think as a matter of public policy, if I can just go off on a little bit of a tangent here because it doesn't specifically address the ambiguity argument, but Counsel, Mr. Stevens is right. It would wreak havoc to exclude occupants from U.M. coverage and therefore UIM coverage because at any given point in time, occupants are within a moving vehicle. I understand your public policy argument. I'm just saying for purposes of statutory construction, the term underinsured motor vehicle. So we're dealing with underinsured motorist coverage as defined in the policy. As defined in the policy. I understand the argument that if an occupant is an insured for U.M. coverage, it should be for UIM as well and the wreaking havoc. I'm just saying the operative words. I mean a straight, strict construction of the statute seems to say that they get to choose who's insured. Well, they get to choose who's insured, but statutory construction also includes an extra element under the case law that was not mentioned in the appellant's presentation. And that is that statutory construction and public policy must also take into account whether a particular policy also is injurious, I don't remember the exact words, injurious to the public or injurious to the legislative framework that the legislature is trying to promote. And certainly under uninsured motorist coverage and underinsured motorist coverage, the legislative framework that is the attempted public policy of the state of Illinois and for the citizens of the state of Illinois is to protect as many people as possible with insurance as they are being propelled in a vehicle on the roadways of Illinois. And again, going back to Mr. Stevens' argument, to exclude an occupant from or to allow an insurance company to exclude an occupant from uninsured motorist coverage and underinsured motorist coverage would in fact wreak havoc in the state of Illinois with respect to insurance law because you'd leave a whole class of people vulnerable to injury without insurance because the occupants of a vehicle at any given point in time doesn't simply include the name insured and doesn't simply include a permissive driver. It includes occupants, as we know, as a matter of the realities of life. But getting back, if I may, Your Honor, to the ambiguity argument, the first paragraph in question brings the definition of the insured into the endorsement. So therefore, in this endorsement, within the four corners of endorsement, you have an internal inconsistency. You have an insured that is defined one way as an occupant within the endorsement because it was brought in, and you have an insured that is defined another way, which is you are a family member. Those are two separate definitions of an insured within the four corners of one document. It's ambiguous. It's internally inconsistent. It violates the plain and ordinary meaning. And for a consumer of insurance out there who's trying to understand what he is bargaining for when he purchases an insurance policy. Counsel, I'm sorry, but your time is up. I'm sorry. Thank you, Your Honor. Thank you. I'd like to address this occupant issue first. Neither counsel has indicated to the court what public policy requires coverage for occupants. The occupants, the passengers in this vehicle, would be covered under their own policies. If they had an automobile policy, if they were standing in the corner and struck by an uninsured or underinsured motorist, they could look to their own policy for coverage. So it wouldn't wreak any havoc whatsoever with the state's idea of protecting people from injury. They are the best to make decisions as to what coverage they're comfortable for the protection of themselves. And there is nothing in any of these statutes that requires us to provide coverage for occupants in our vehicle. With that concept in mind, when the court looks at public policy issues and they have to look at them sparingly if they're going to strike provisions in contracts, keeping in mind that there's a strong freedom of contract concept in this state, then if we don't have to insure those individuals and they don't fall within the classifications of insureds required to have coverage under those statutes, then there is no overriding public policy reason for not providing the coverage in our policy. The statute that we're referring to is not only Section 317 of the Financial Responsibility Law requiring coverage for the named insured and permissive drivers. We're also referring to the language in the Uninsured Motorist Statute regarding coverage, which says that no policy insured against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of the vehicle. Those are the classifications of insureds that Phelan looked at and said that those classifications are liability insureds. That was reaffirmed many years later in Bertanini by the appellate court in the First District and also looked at by this court, I'm sorry, by the underlying court in this case, recognizing that the operative language, the language that I referred to before, is similar that makes Phelan applicable to this case. The fact that it was decided before that it is the same operative language and it is for that reason that farmers felt compelled by statute, by case law, interpreting that statute who must be given this type of coverage that they paid O'Connor's claim. Now, if farmers was wrong in the payment of that claim, it has no bearing whatsoever as to whether or not the occupants, the claimants in this case, qualify as insureds under the underinsured motorist coverage of its policy. It really is an irrelevant issue. It's one that the appellate court dealt with without argument, and it's not in the record as to the motivation of what farmers' payment was. It's certainly not relevant to the determination of any issue in this case. What prompted them to list occupant as an insured in the UM coverage? Outside of this forum. Well, to be absolutely candid, Your Honor, I have no idea why they included occupant in the definition in the main body of the policy. In working for this company for the last 20-plus years, I can tell you being involved in constructing their policy language, that they do have a main body of the policy. They are confronted with many different statutes throughout the country that have differing views as to what should be or should not be included in an uninsured motorist coverage. The reason why there's a separate endorsement is because a number of states don't even require underinsured motorist coverage to be granted. This state, when it amended the statute to include Section 143A2 sub 4, required that we offer the limits in an equal amount to what is provided for uninsured motorist coverage. Nowhere in the statute does it require us to provide any coverage for occupants. In fact, the court accurately portrays language in the statute which says those that we define by the policy. Now, if farmers were to This just came to mind. You heard my question of opposing counsel with respect to their position is not, at least for today, that occupant has to be part of the definition. I believe their position is occupants in UM, it has to be in UIM. And I'm just thinking out loud here on the public policy nature of this whole argument. Is there a possibility that it would prompt farmers to take out the debt in future policies, to take out the adding of occupant as an insured for UM coverage? They may. You know, as it pertains to the Illinois specific policies that issue, they may issue an endorsement taking out the language or changing the definition of uninsured motorist, insured persons for uninsured motorist coverage to not include occupants because clearly, as I have indicated, and it has not been rebutted in this case, there is no requirement under any statute or any case law for us to provide coverage for occupants. And that is the primary basis of the argument. And if the court looks at the strict language of our policy, and it ties into the ambiguity argument as well, we limit the definition of insured to that coverage. If you look at the language in the policy with regard to uninsured motorist coverage, it says insured for this coverage only. And that language is mirrored in the endorsement to our policy as well, as it pertains to underinsured motorist coverage. So there can be no confusion as to who farmers defined as insured under its policy. Further, we've heard no argument today that farmers is required in any way to provide such coverage to occupants. As I indicated to the court, there would be no overriding public policy reason to require such coverage because these individuals would be covered under their own automobile policies for uninsured or underinsured motorist coverage if they so purchased the coverage. So based on all of those concepts, there is no public policy ground to strike down the definition contained within farmers' policy. If this court follows the reasoning in Coase, which says the insurance company can define insured anyway for uninsured or underinsured motorist coverage in its policy, even if it's more restrictive than the definition of liability insured, then farmers err in making payment to O'Connor. But that error doesn't warrant payment or coverage under our policy for the claimants in this case. We believe that it's a reasonable interpretation of the statute to require U.M. and U.I.M. coverage to liability insureds. The pronouncement in Sulser in Cummins v. Country Mutual that counsel referenced a moment ago, in those cases it was not in dispute who was named insured under the policy. And the court looked at the consequences of the coverage with regard to those policyholders. Here it's very clear that farmers never intended, nor did it define an occupant as an insurer for underinsured motorist coverage in its policy. And to completely ignore the language that's contained within our statutes and create this coverage because farmers gratuitously provided that coverage to insurers for uninsured motorist coverage would be a rewriting of this legislation, which is really frowned upon in this state. And for those reasons, we're asking the court, this court, to overturn the decision of the appellate court and census the de novo standard review. They can enter judgment in farmers' favor finding that the claimants in this case, occupants, are not entitled to underinsured motorist coverage under its policy. Thank you. Thank you, counsel. Case 108038 will be taken under advisement as agenda number 14.